UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

ARNOLD WARRICHAIET,

                Petitioner,

                v.                              Case No. 05-CV-905

MICHAEL JANSEN,
Oconto County Sheriff,

                Respondent.


_____

## ORDER

     Petitioner Arnold Warrichaiet ("Warrichaiet") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his February 25, 2003, convictions for assault on a law enforcement officer and disorderly conduct. In lieu of a withheld sentence on the assault charge, Warrichaiet was sentenced to a term of four years probation that included six months work release as a condition, together with a concurrent sentence of 90 days in jail on the disorderly conduct charge. Because the court concludes it is likely that improperly introduced extraneous information had a substantial and injurious influence in determining the jury's verdict, the court is obliged to grant the writ.

# BACKGROUND

The Wisconsin Court of Appeals set forth a thorough statement of the pertinent facts in its decision dated March 1, 2005.

On Thanksgiving Day 2001, a number of people had gathered at Francis' [Arnold Warrichaiet's Father's] home, initially congregating near their vehicles parked on the road. Department of Natural Resources Wardens Frederick Peters and Michael Kitt had driven past and noted the group. The wardens parked and approached the group, inquiring how hunting was going. The wardens then specifically asked whether anyone had shot a deer, and several group members stated that no one had. The crowd gradually drifted closer to the residence, while Peters began walking along the road and looking into the parked vehicles for weapons in plain sight.

Peters then observed a deer carcass hanging in an open storage shed farther back on the property. He asked the group whose it was, but no one claimed ownership. Peters testified he was concerned that the deer might not be properly registered and decided to inspect the carcass. Members of the group initially demanded a search warrant, which Peters denied he needed. The group would not relent, so Peters went to his vehicle and called for assistance.

When Peters returned from his vehicle, Francis' grandson Phillip said he had shot the deer and then offered his license, carcass tag, and registration tag. Peters nonetheless insisted upon inspecting the carcass and asked someone to accompany him from the residence to the shed. At that point, Arnold, Francis, and other family members stepped in front of Peters to block his progress.

Arnold contends that Peters grabbed him by the shoulder to push him aside. Arnold raised his hands without touching Peters, who allegedly grabbed Arnold and dragged him across the lawn to arrest him for obstruction. Peters testified that Arnold first made a gesture as if he were going to push Peters, who then grabbed Arnold by the shoulder to deflect him and move him out of the way. Arnold then apparently attempted to break away from Peters' grasp, prompting the warden to reach for his pepper spray. Arnold punched Peters below the left eye.

By this point, other officers and wardens had arrived on the scene, including Peters' supervisor, Warden Robert Goerlinger. Goerlinger began photographing the area, ostensibly to document the assault on Peters. However, he also began photographing the shed, some forty-five yards away from the area of the assault. Francis demanded a warrant and, when that was not produced, he slapped at

Goerlinger and his camera. Goerlinger ceased his investigation to prevent further confrontations or injury to the wardens.

Ultimately, Francis was charged with resisting Warden Kitt, obstructing Warden Goerlinger, obstructing Warden Peters, and disorderly conduct. Arnold was charged with assault on a law enforcement officer, resisting arrest, obstructing an officer, and disorderly conduct. The cases were joined for trial. The court dismissed Arnold's obstruction charge and the jury acquitted him on the resisting charge, but he was convicted of assault and disorderly conduct . . . .

*State v. Warrichaiet*, 2005 WI App 88, ¶¶ 2-7, 281 Wis. 2d 271, 695 N.W.2d 903.

## DISCUSSION

Warrichaiet raises four claims in his federal habeas petition: (1) insufficiency of the evidence on the assault charge; (2) insufficiency of the evidence on the disorderly conduct charge; (3) ineffective assistance of counsel arising from trial counsel's failure to request particular jury instructions relating to the disorderly conduct charge; and (4) the jury's verdict was based upon extraneous information after a juror mentioned during deliberations that Warrichaiet had been in a bar fight.

The Wisconsin Court of Appeals addressed the merits of each of these claims in its March 1, 2005, decision. The Wisconsin Court of Appeals rejected Warrichaiet's challenge to the sufficiency of the evidence to convict him of the assault and disorderly conduct charges after concluding that a rational jury could find him guilty beyond a reasonable doubt for both charges based upon the evidence presented at trial. The Wisconsin Court of Appeals also held that Warrichaiet did not demonstrate that he was prejudiced by his trial counsel's performance. Finally, the Wisconsin Court of Appeals held that the jury in Warrichaiet's trial was not

prejudiced when one of the jurors mentioned during deliberations that Warrichaiet had been in a bar fight.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, governs the grant of a writ of habeas corpus. Under § 2254(d), if a constitutional claim was adjudicated on the merits by the state courts, a federal court may only grant habeas relief based on that claim if the state court's decision is "contrary to" or "an unreasonable application of" clearly established federal law as determined by the U.S. Supreme Court, or if the state court's determination of the facts was unreasonable in light of the evidence presented. *Id.* A state court decision must be more than incorrect from the point of view of the federal court; AEDPA requires that it be "unreasonable," which means something like lying well outside the boundaries of permissible differences of opinion. *Williams v. Taylor*, 529 U.S. 362, 410-12 (2000).

Pursuant to 28 U.S.C. § 2254(a), the district court shall entertain an application for the writ on behalf of a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The conditions set forth in § 2254(a) are satisfied when the district court concludes there has been a violation of federal law and that the violation played a causal role in the state prisoner's custody. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003). When the court considers whether the conditions set forth in § 2254(a) are satisfied, the court is required under the AEDPA to review the state court's adjudication on the merits deferentially and set the state

-4-

court decision aside only if the court committed unreasonable error. *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). Findings of fact made by the state courts are presumed correct and are rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000).

Warrichaiet challenges the sufficiency of the evidence of the assault charge. On direct appeal, the Wisconsin Court of Appeals reviewed Warrichaiet's sufficiency claim under the standard enunciated in *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752, 755 (Wis. 1990): "an appellate court may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." Wisconsin effectively duplicates the U.S. Supreme Court standard for sufficiency challenges. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Warrichaiet does not claim that the Wisconsin Court of Appeals applied the wrong standard. Rather, Warrichaiet claims that the Court of Appeals applied the standard unreasonably.

Warrichaiet was charged with battery to a law enforcement officer, contrary to Wis. Stat. § 940.20(2) (2005). Wisconsin defines the crime of battery to a law enforcement officer as follows: "Whoever intentionally causes bodily harm to a law enforcement officer . . . acting in an official capacity and the person knows or has reason to know that the victim is a law enforcement officer . . . by an act done without the consent of the person so injured, is guilty of a Class H felony." *Id.* Warrichaiet does not dispute Peters' qualification as a law enforcement officer.

However, Warrichaiet claims that there is insufficient evidence to convict him of the assault charge because he claims he acted in self-defense under Wis. Stat. § 939.48, an affirmative defense he asserts the state failed to disprove. Under Wis. Stat. § 939.48(1), an actor "may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference" with his or her person. *Id.* Warrichaiet argues that his use of force was justified by Peters' "unlawful assault" of grabbing his shoulder to move him as well as the subsequent events.

Warrichaiet argues that the state's evidence and Peters' own testimony reflect that Peters initiated the physical contact, grabbing Warrichaiet to shove him aside so Peters could search the shed. Warrichaiet asserts that no evidence permits a reasonable inference that it was Warrichaiet who initiated the physical confrontation. Warrichaiet states that after Peters initiated the physical contact Warrichaiet merely put his hands up to protect himself. Although Warrichaiet testified at trial that he did not hit or punch Peters in any way, (Ex. I Doc. 43, 88), he argued that even assuming he did strike Peters, he only used such force that he believed was necessary to terminate Peters' "unlawful assault." Thus, Warrichaiet contends, no rational trier of fact could have determined that the state had disproved self-defense beyond a reasonable doubt.

Under Wisconsin law, when a defendant successfully raises an affirmative defense, the state must disprove the defense beyond a reasonable doubt. *State v. Head*, 2002 WI 99, ¶ 106, 255 Wis. 2d 194, 648 N.W.2d 413. The Wisconsin Court

of Appeals noted that evidence was presented that suggested that Warrichaiet was the aggressor, not Peters. "If the jury accepted the testimony that Arnold made a motion as though he were about to attack Peters, it would necessarily reject Arnold's self-defense argument." *Warrichaiet*, 2005 WI App 88 at ¶ 36. And even if the jury determined that Peters was the aggressor by grabbing Warrichaiet's shoulder, the jury could have concluded that the rest of Warrichaiet's actions were unreasonable. The Wisconsin Court of Appeals stated:

> The jury could have concluded that if Arnold was able to free himself from Peters' grasp, the reasonable response would have been to back away from the fight to de-escalate the situation, not to punch the warden. That is, the jury could have concluded Arnold overreacted, thereby exacerbating the situation and taking it from self-defense to assault.

*Id.* Thus, the Wisconsin Court of Appeals ultimately concluded that from the evidence presented, a reasonable jury could have found beyond a reasonable doubt that Warrichaiet's actions were an unreasonable use of force.

Viewing the evidence in the light most favorable to the conviction, the court agrees that sufficient evidence supports a conclusion that Warrichaiet was the aggressor. Specifically, Peters testified at trial that he tried to move around Warrichaiet:

> and in doing so brought my right arm up and put it on his left shoulder area just to step around him and keep him from stepping in front of me again. . . . Immediately when I did that and I kind of took a step forward and to my right to sort of step around where Arnold was, Arnold came up – Arnold Warrichaiet brought both hands up in this manner towards my chest region.

(Ex. I Doc. 41, 169-70.) Peters also testified that he grabbed Warrichaiet's arm because Warrichaiet was "coming up in an effort to push at me . . . ." (*Id.* at 170.) and that he believed Warrichaiet was going to make contact with him, but Peters "reacted before he could." (*Id.* at 218.)

Even if there were insufficient evidence that Warrichaiet was the aggressor, sufficient evidence supports a conclusion that Warrichaiet used unreasonable force in self-defense. Pursuant to Wis. Stat. § 939.48(1), even if Warrichaiet was privileged to use force in self-defense, he "may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference." *Id.* Peters testified that while he was reaching for his pepper spray, Warrichaiet "swung back and was coming up in what appeared to be a roundhouse type of punch toward me . . . striking me below my left eye." (Ex. I Doc. 41, 172-73.) Thus, the jury could have concluded that if Warrichaiet was able to break one hand free from Peters' grasp to punch Peters, Warrichaiet's actions exceeded the force necessary to prevent Peters' interference. As the Wisconsin Court of Appeals noted, the jury could have concluded that the reasonable response for Warrichaiet would have been to back away, not to punch Peters. In sum, viewing the evidence in the light most favorable to the conviction, sufficient evidence supports a conclusion that Warrichaiet was guilty of battery to a law enforcement officer.

Warrichaiet also challenges the sufficiency of the evidence of the disorderly conduct charge. Wisconsin's disorderly conduct statute provides as follows:

"Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." Wis. Stat. § 947.01.

Warrichaiet asserts that because he was acting in self-defense, he was not guilty of disorderly conduct. However, as noted above, the evidence viewed in the light most favorable to the conviction sufficiently supports a conclusion that Warrichaiet was the aggressor and that Warrichaiet overreacted when he punched Peters, and he was not privileged to use such force in self-defense. Thus, the court agrees with the Wisconsin Court of Appeals' rejection of Warrichaiet's argument that because he proved self-defense on the assault charge, the privilege of self-defense applies to the disorderly conduct charge as well. *Warrichaiet*, 2005 WI App 88 at ¶ 38.

Warrichaiet also asserts that the jury was improperly authorized to convict him of disorderly conduct based on either Warrichaiet's physical acts, language, or both. The trial court instructed the jury that disorderly conduct "is committed by a person who in a private place engages in abusive conduct under circumstances in which such conduct tends to cause or provoke a disturbance." (Ex. I Doc. 43, 184-85.) The trial court stated that the disorderly conduct allegations consisted of Warrichaiet "engag[ing] in an argument and struggle with Conservation Warden Frederick Peters . . . " and that "[d]isorderly conduct may include physical acts or language or both." *Id*. Warrichaiet asserts that the trial court's instructions were in error because his

"language" or "argument" was constitutionally protected speech and it is impossible to tell if the jury impermissibly convicted him on that ground, instead of his actions.

On direct appeal, the Wisconsin Court of Appeals reviewed Warrichaiet's sufficiency claim regarding the disorderly conduct charge under the standards enunciated in *State v. Crowley*, 143 Wis. 2d 324, 333, 422 N.W.2d 847, 851-52 (1988) (holding that jury unanimity in the determination of the mode of committing a single crime is not required). In *Crowley* the Wisconsin Supreme Court held that when a jury "may have arrived at its verdict by one of two independent grounds and there is no certainty in respect to which ground is used, a court is obliged to search the record in an effort to support the verdict of conviction and to determine that the evidence is sufficient under each mode of proof." *Id.* at 334. Under this rule, a verdict is "to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 334-35. The Court of Appeals also applied the standard enunciated in *State v. Lohmeier*, 205 Wis. 2d 183, 193-94, 556 N.W.2d 90, 94 (1996):

> Wisconsin courts should not reverse a conviction simply because the jury possibly could have been misled; rather, a new trial should be ordered only if there is a reasonable likelihood that the jury was misled and therefore applied potentially confusing instructions in an unconstitutional manner. Furthermore, in making this determination, appellate courts should view the jury instructions in light of the proceedings as a whole, instead of viewing a single instruction in artificial isolation.

*Id.* Applying these standards, the Wisconsin Court of Appeals concluded that the jury was not confused by the jury instruction. Rather, based on a review of the

record, the Court of Appeals concluded that it was evident that the jury convicted Warrichaiet of disorderly conduct based on his actions, not his speech.

Warrichaiet claims that the Wisconsin Court of Appeals applied the wrong standard and that its decision is contrary to controlling U.S. Supreme Court authority in *Terminiello v. Chicago*, 337 U.S. 1 (1949). In *Terminiello*, the Supreme Court held that a Chicago city ordinance was partially unconstitutional because it permitted the conviction of a person, "if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest." *Id.* at 5. Because part of the statute was unconstitutional, and it could not be determined that the defendant was not convicted under that part, the conviction could not be sustained. *Id.*; *see also Zant v. Stephens*, 462 U.S. 862, 882 (1983) ("when a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together." (citing *Thomas v. Collins*, 323 U.S. 516, 528-29, 540-41 (1945)); *Street v. New York*, 394 U.S. 576, 587 (1969) ("Moreover, even assuming that the record precludes the inference that appellant's conviction might have been based solely on his words, we are still bound to reverse if the conviction could have been based upon both his words and his act.").

When determining whether the jury convicted Warrichaiet of disorderly conduct for his actions, his words, or both, the court does not conduct a subjective

enquiry into the jurors' minds. *Yates v. Evatt*, 500 U.S. 391, 404 (1991), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62 (1991). Rather, the answer must come, instead, from analysis of the instruction given to the jurors. *Id.* It is well established that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *Boyd v. United States*, 271 U.S. 104, 107 (1926). "While this does not mean that an instruction by itself may never rise to the level of constitutional error, *see Cool v. United States*, 409 U.S. 100 (1972), it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).

A review of the record demonstrates that the disorderly conduct charge was based on Warrichaiet's actions, not his speech. The state was prosecuting Warrichaiet for his actions, not what he said. The focus of the state's evidence was on Warrichaiet's actions, specifically, him punching Peters. The state did not emphasize what Warrichaiet said to the wardens. Indeed, the jury was repeatedly informed that the wardens needed a search warrant to go back to the shed, and as a result, the trial court dismissed the obstructing count against Warrichaiet for his standing in the path of the wardens and verbally telling them that he would not move until they obtained a warrant. (Ex. I Doc. 43, 135-36, 162, 164, 168-69, 186-87, 189, 198-99, 202-03.) Thus, the jury was informed that Warrichaiet had the right to verbally object to the lack of a search warrant. Moreover, in closing arguments, the

state described the evidence supporting the disorderly conduct charge as follows: "his disorderly conduct involved the pulling, the striking, the involvement with the police officer, the running, that behavior." (Ex. I Doc. 43, 144.) Thus, the state properly focused the jury's attention on Warrichaiet's actions, not his speech.

Warrichaiet contends that the fact that the state focused its case on Warrichaiet's actions instead of his arguments is irrelevant because under the Supreme Court of Wisconsin's holding in *State v. Perkins*, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762, it is the jury instructions that control, not arguments by counsel. *Id.* at ¶ 41 ("Arguments by counsel cannot substitute for an instruction by the court."). In *Perkins*, the Supreme Court of Wisconsin held that insufficient jury instructions may result in a controversy not being fully tried, therefore warranting a new trial. *Id.* at ¶ 49. The jury instruction in *Perkins* was incomplete because it failed to instruct the jury to apply an objective standard in determining whether the defendant made a "true threat." *Id.* at ¶ 37. The court held that arguments by counsel could not adequately inform the jury that they could convict the defendant only if it applied an objective standard and found that the defendant made a true threat. *Id.* at ¶ 40. Here, however, the jury instructions were not incomplete. Although the jury instructions could have been more clear that the disorderly conduct charge was based on Warrichaiet's actions, the jury instruction was sufficient for the disorderly conduct charge to be fully tried. Ultimately, the jury instruction does not negate the disorderly conduct conviction based on the culmination of Warrichaiet's

trial "which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge." *Naughten*, 414 U.S. at 146-47.

The Wisconsin Court of Appeals viewed the disorderly conduct jury instruction in light of the record as a whole pursuant to *Lohmeier*, 205 Wis. 2d at 193-94, and in accordance with clearly established federal law enunciated in *Boyd*, 271 U.S. at 107 and *Naughten*, 414 U.S. at 146-47. Viewing the evidence in the light most favorable to the conviction, the record as a whole supports a conclusion that Warrichaiet was found guilty of disorderly conduct based on his actions. Thus, the court concludes that Warrichaiet fails to demonstrate that the Wisconsin Court of Appeals decision was "contrary to" or "an unreasonable application of" clearly established federal law as determined by the U.S. Supreme Court.

Warrichaiet also asserts that he was denied the effective assistance of counsel. On direct appeal, the Wisconsin Court of Appeals reviewed Warrichaiet's claim of ineffective assistance of counsel under the standard enunciated in *State v. Reed*, 2002 WI App 209, ¶ 14, 256 Wis. 2d 1019, 650 N.W.2d 885: "To sustain a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial." Wisconsin effectively duplicates the two-part analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this framework, Warrichaiet must demonstrate (1) that his counsel's representation was deficient and (2) that this deficiency prejudiced him so that there is a probability sufficient to undermine our confidence in the outcome of the case. The Wisconsin Court of Appeals correctly noted the court need not

-14-

address both components if the defendant fails to make a sufficient showing on one of them. *Warrichaiet*, 2005 WI App 88 at ¶ 51. Warrichaiet does not claim that the Wisconsin Court of Appeals applied the wrong standard. Rather, Warrichaiet claims that the Court of Appeals applied the standard unreasonably.

Warrichaiet argues that since his trial counsel did not request a jury instruction regarding the interplay of a disorderly conduct charge and the First Amendment, his trial counsel was constitutionally deficient. The jury instruction, Warrichaiet asserts, would have informed the jury that (1) the state must prove beyond a reasonable doubt that the speech or conduct was not protected by the First Amendment; (2) that the First Amendment encompasses the right to verbally challenge or oppose police action, even in vulgar or offensive language, so long as that language does not constitute "fighting words," *see Houston v. Hill*, 482 U.S. 451, 461-62 (1987); and (3) that, even in terms of "fighting words," special rules apply limiting that exception from First Amendment protection when the target of those words is a peace officer. *See id*.

To succeed in meeting the prejudice prong of *Strickland*, Warrichaiet must show a reasonable probability that, but for counsel's errors, the result of the proceeding would be different. See *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2002). A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome. *See Strickland*, 466 U.S. at 694. "On a habeas appeal, the court looks at [the *Strickland*] test not directly, but rather asks whether the state

court made a reasonable application of this law to the facts of the case." *Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir. 2004).

On direct appeal, Warrichaiet failed to demonstrate a reasonable probability that, but for his trial counsel's errors, the result of his trial would have been different. Thus, the Wisconsin Court of Appeals concluded that Warrichaiet was not prejudiced by his trial counsel's failure to include such a jury instruction because the record as a whole demonstrated that Warrichaiet's disorderly conduct conviction was based on his actions, not on protected speech. *Warrichaiet*, 2005 WI App 88 at ¶ 53.

The court concludes that the Wisconsin Court of Appeals reasonably applied *Strickland* when it determined that Warrichaiet did not show that he was prejudiced by his trial counsel's failure to include the jury instruction regarding the limitations placed on convictions for disorderly conduct by the First Amendment. Although the jury instruction might have clarified for the jury that the disorderly conduct charge was based solely on Warrichaiet's actions and not his speech, the record as a whole suggests that Warrichaiet was convicted for disorderly conduct based on his actions. Indeed, even if Warrichaiet's trial counsel had requested the jury instruction, given that sufficient evidence supports the conviction for disorderly conduct based on Warrichaiet's actions, there is no reason to conclude that the result of the trial would have been different. Thus, the court concludes that Warrichaiet fails to show that the Wisconsin Court of Appeals acted unreasonably when it concluded that Warrichaiet was not prejudiced by his trial counsel's performance.

Finally, Warrichaiet challenges the Wisconsin Court of Appeals' holding that the jury was not prejudiced by extraneous information introduced by one of the jurors. Warrichaiet complains that at least three jurors overheard another juror mention during deliberations that Warrichaiet had been in one or more bar fights, at least one juror heard the juror state the he knew Warrichaiet to be a "big bully," and at least one juror heard the juror state that one of Warrichaiet's brothers was involved in similar misconduct at a bar.

On appeal, the Wisconsin Court of Appeals reviewed Warrichaiet's extraneous information claim under the standard enunciated in *State v. Eison*, 194 Wis. 2d 160, 533 N.W.2d 738 (1995):

> Initially, the party seeking to impeach the verdict must demonstrate that a juror's testimony is admissible under sec. 906.06(2) by establishing (1) that the juror's testimony concerns extraneous information (rather than the deliberative process of the jurors), (2) that the extraneous information was improperly brought to the jury's attention, and (3) that the extraneous information was potentially prejudicial . . . . After the circuit court determines whether the party has satisfied sec. 906.06(2), it determines whether one or more jurors engaged in the alleged conduct and whether the error was prejudicial.

*Id.* at 172-73 (citations omitted). Warrichaiet asserts that the Court of Appeals' holding was unreasonable and contrary to clearly established federal law as determined by the U.S. Supreme Court.

The trial court conducted a post-conviction hearing to determine whether the jury was prejudiced by the extraneous information. The Wisconsin Court of Appeals' decision summarized the results of that hearing as follows:

Four jurors testified, and a review of their testimony bears out the trial court's conclusion. One juror denied that any extraneous information was discussed by the jury at all. Two jurors stated that a younger male juror had brought up the alleged bar fight, but the fourth juror could not remember who had mentioned it. The juror with the information either heard Arnold had been in a fight, heard about it but might not have seen it, or actually observed it. One juror stated that the reporting juror might only have said that Arnold had engaged in misconduct-not a fight.

The juror with the information might have addressed the whole jury, or might have addressed no one in particular. One juror said that the reporting juror mentioned Arnold's brother also being involved in the fight; one said the reporting juror made no mention of others. Two jurors said that there was no mention of an arrest; the third was not asked. One juror testified the alleged information was discussed with the whole jury, one said it was only discussed a little, and the third said there was no discussion at all.

*Warrichaiet*, 2005 WI App 88 at ¶¶ 29-30.

The Wisconsin Court of Appeals noted that the state conceded that Warrichaiet fulfilled the first portion of the test under *Eison*, specifically, that the juror's testimony concerned extraneous information, which was improperly brought to the jury's attention, and was potentially prejudicial. *Warrichaiet*, 2005 WI App 88 at ¶ 25. The Court of Appeals also stated that pursuant to *Eison*, the state must show beyond a reasonable doubt that the extraneous information did not contribute to the verdict. *Eison*, 194 Wis. 2d at 178 (holding that Wisconsin courts adhere to the constitutional error test for criminal cases enunciated in *Chapman v. California*, 386 U.S. 18 (1967)).

The Wisconsin Court of Appeals noted that Warrichaiet's trial involved a question of Warrichaiet's propensity for aggression, similar to allegations of provoking a bar fight. Accordingly, the Court of Appeals disagreed with the trial

Case 2:05-cv-00905-JPS   Filed 07/28/06   Page 18 of 27   Document 17

court's conclusion that since this case did not involve a bar fight, the extraneous information regarding a bar fight was unimportant. However, the Court of Appeals concluded that the extraneous information would have little influence on the average juror. The Court of Appeals noted that there was a great variety and conflict in the recollections of the jurors regarding the information and that Warrichaiet failed to establish exactly what was said or to whom. Thus, the Court of Appeals agreed with the trial court's characterization of the extraneous information as unreliable gossip and determined that an average juror would view it as such. *Warrichaiet*, 2005 WI App 88 at ¶ 31.

Relying on *State v. Adams*, 221 Wis. 2d 1, 12, 584 N.W.2d 695 (Wis. Ct. App. 1998) (holding that courts presume the jury follows the trial court's instructions), the Court of Appeals concluded that since the jury was instructed that anything seen or heard outside the courtroom was not evidence to be considered, the jury applied this standard to the extraneous information and, thus, there was no prejudice from the extraneous information. *Warrichaiet*, 2005 WI App 88 at ¶ 32.

Warrichaiet contends that it is likely that the extraneous information seriously impacted the jury's assessment of whether Warrichaiet acted reasonably in self-defense. Warrichaiet states that several circumstances point to this conclusion. Specifically, the extraneous information was brought to the attention of the jurors at a critical point in the trial, during deliberations, the jury was out for an extended period of time (about 7 hours) indicating significant disagreement among the jurors, and the jury's acquittal of both defendants on some of the counts demonstrated at

-19-

least a partial rejection of the state's testimony. Warrichaiet also states that a reasonable juror easily could have deemed the extraneous information as reliable since the juror claimed to have personally witnessed the bar fight and bullying by Warrichaiet. (Ex. I Doc. 75, 55, 62-63.) Warrichaiet notes that the extraneous information was significant enough for three jurors to remember the extraneous information nearly a full year after the trial. Given that the extraneous information relates to Warrichaiet's propensity to get into fights, Warrichaiet contends, a reasonable juror easily could have been affected by the extraneous information in concluding that Warrichaiet was the aggressor in the events at issue or did not act reasonably in self-defense.

The respondent asserts that the extraneous information is not unlike the situation presented in *United States v. Spano*, 421 F.3d 599 (7th Cir. 2005). In *Spano*, the Seventh Circuit held that the district court did not abuse its discretion in concluding that the likelihood that two items of extraneous information ( a book that discussed organized crime in Cicero in the 1920s to 1940s and a reference to one defendant's possible connections to organized crime) had polluted the jury's consideration of the case was too slight to warrant hauling the jurors before the court for an examination. *Id* at 605-06. The Seventh Circuit noted:

> As we explained in *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005), "the extraneous communication to the juror must be of a character that creates a reasonable suspicion that further inquiry is necessary to determine whether the defendant was deprived of his right to an impartial jury. How much inquiry is necessary (perhaps very little, or even none) depends on how likely was the extraneous communication to contaminate the jury's deliberations." . . . Jurors after all know many things that are not presented to them in the course of the

trial, and doubtless use much of that background knowledge during their deliberations. Lots of things mentioned in jury deliberations are outside the record. Were the report of a juror who claims to have heard such a thing mentioned enough to require a hearing, few trials would end without a post-trial interrogation of the jurors; jury service would be even less popular than it is.

*Id.* at 605 (citations omitted).

Although a defendant's right to be tried by a fair and impartial jury is guaranteed by the Sixth Amendment, the Supreme Court has made it clear "that due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, in most cases, the redress for assertions of jury bias is a hearing in which the defendant is afforded the chance to prove actual bias. *Id.* at 215. Here, unlike the court in *Spano* which determined that no inquiry was warranted, Warrichaiet was afforded such a hearing. At the post-conviction evidentiary hearing, Warrichaiet had the opportunity to prove that the extraneous information had substantial and injurious effect or influence in determining the jury's verdict, however, the trial court concluded that the extraneous information "was in the nature of gossip rather than factual allegations to be relied upon by jurors." *Warrichaiet*, 2005 WI App 88 at ¶ 27. Thus, pursuant to *Eison*, 194 Wis. 2d at 178, the trial court determined that the state demonstrated beyond a reasonable doubt that the extraneous information did not contribute to the verdict.

The Wisconsin Court of Appeals reviewed the trial court's conclusion that the jury was not prejudiced de novo and agreed with the trial court's characterization of

the extraneous information as unreliable gossip. *Warrichaiet*, 2005 WI App 88 at ¶ 31.

> Ultimately, Arnold has not established what was said or to whom. However, the record establishes that the trial court believed whatever discussion the jurors had was not a material component of the jury's deliberations. Indeed, the great variety and conflict of the recollections supports the trial court's characterization of the information as unreliable gossip and the notion that an average juror would view it as such.

*Id.*

Warrichaiet argues that the Wisconsin Court of Appeals' conclusion that the extraneous information was harmless is contrary to clearly established federal law as determined by the U.S. Supreme Court in *Chapman v. California*, 386 U.S. 18, 24 (1967) ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). As noted above, Wisconsin adopted this standard in *Eison*, 194 Wis. 2d at 178. However, as the petitioner noted in his brief, this standard has since been replaced with a "less onerous standard" on habeas review of constitutional error in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The Supreme Court in *Brecht* held that the standard for determining whether a constitutional error is harmless under § 2254 is whether it had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Aleman*, 320 F.3d at 690 (holding that a harmless error does not play a causal role in the outcome and thus does not justify habeas relief). Whether the burden on this

question is on the petitioner or the respondent appears to remain unresolved in the Seventh Circuit. *See, e.g., Anderson v. Cowan*, 227 F.3d 893, 898 (7th Cir. 2000) (holding that it is unclear whether the holdings in *Brecht* and *O'Neal* have survived the passage of AEDPA); *United States ex rel. Jones v. Chrans*, 187 F. Supp. 2d 993, 1005-06 (N. D. Ill. 2002). However, the Supreme Court observed in *O'Neal v. McAninch*, 513 U.S. 432 (1995), with respect to harmlessness inquiries, that consideration of burdens of proof will rarely suffice to determine a case's result: it is "conceptually clearer for the judge to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?' than for the judge to try to put the same question in terms of proof burdens." *Id.* at 436-37. "When a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *Id.* at 445. A judge is in "grave doubt" when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435.

Given that the state concedes that the extraneous information was improperly brought to the jury's attention, and was potentially prejudicial, the court must now consider whether or not the error was harmless. In other words, habeas relief cannot be granted unless the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

In support of its conclusion, the Wisconsin Court of Appeals presumed that the jury followed the trial court's instructions. *Warrichaiet*, 2005 WI App 88 at ¶ 32. The

-23-

jury was instructed that "[a]nything you may have seen or heard outside the courtroom is not evidence to be considered. You are to decide the case solely on the evidence offered and received at trial." (Ex. I Doc. 43, 205.) Similarly, the Seventh Circuit held that courts presume "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instruction given them." *United States v. Puckett*, 405 F.3d 589, 599 (7th Cir. 2005) (quoting *United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998)). This presumption can "only [be] overcome if there is an overwhelming probability that the jury was unable to follow the instruction as given." *Id.* (citations omitted).

Here, there is an overwhelming probability that the jury did not follow the instructions. Although Warrichaiet did not establish with specificity exactly what was said to whom while the jury was deliberating, it is undisputed that one of the jurors improperly introduced extraneous information that was potentially prejudicial. The information was not the type of background knowledge referred to in *Spano*, 421 F.3d at 605, rather, the information consists of allegations of prior acts done by Warrichaiet. Under Wisconsin law, evidence of prior acts, like the extraneous information, is generally inadmissible at trial primarily because it is inherently prejudicial. *See Whitty v. State*, 34 Wis. 2d 278, 292, 149 N.W.2d 557, 563 (Wis. 1967) (holding that prior-crimes evidence is excluded due to, among other things, the "overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts"). Here, it is likely the extraneous

information pertaining to Warrichaiet's propensity for aggression or bullying would have influenced the average juror's determination that Warrichaiet was either the aggressor or not reasonably acting in self-defense in the events at issue.

Moreover, since the juror claimed to have personally witnessed the bar fight and bullying by Warrichaiet, a reasonable juror could have deemed the extraneous information as reliable. Indeed, the extraneous information was significant enough for three jurors to remember the extraneous information nearly a full year after the trial. (*See* Ex. I Doc. 75, 55 ("It was a younger man, juror, was in there and he said I remember Arnold when he was in school. He was a big bully. He always started fights."), 62 ("Saying that he was in a bar and he seen him already in fights in a bar afterwards."), 63 ("He just said that he remembered him in school and he was a big bully.")) As the Wisconsin Court of Appeals reasonably noted, since Warrichaiet's trial involved a question of Warrichaiet's propensity for aggression, the juror's allegations of Warrichaiet provoking a bar fight and bullying were relevant and important, *Warrichaiet*, 2005 WI App 88 at ¶ 28, especially since the allegations were made during jury deliberations.

If even one juror was prejudiced by the extraneous information, the jury cannot be considered impartial. *Parker v. Gladden*, 385 U.S. 363, 366 (U.S. 1966). The question of whether a juror was biased by the extraneous information is one of historical fact. *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). While the court owes deference to state court determinations of factual issues, "deference does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322,

-25-

324 (2003). After reviewing the record, the court is in grave doubt as to the harmlessness of the extraneous information. Indeed, given the prejudicial nature of the extraneous information and its relevancy to the charges, it is likely that the extraneous information had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht* 507 U.S. 619 at 637. Thus, pursuant to the Supreme Court's holding in *O'Neal*, the court is obliged to grant the petition for habeas relief. *O'Neal*, 513 U.S. at 445 ("When a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief.").

In conclusion, Warrichaiet demonstrates that the Wisconsin Court of Appeals' determination that the improperly introduced extraneous information was harmless was based on an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). The evidence establishes that a member of the jury improperly introduced potentially prejudicial extraneous information and the court has grave doubts as to the harmlessness of the extraneous information. Thus, under 28 U.S.C. § 2254 and pursuant to *O'Neal*, 513 U.S. at 445, the court will grant Warrichaiet's petition for a writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that Warrichaiet's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the judgment of conviction entered February 25, 2003, by the Circuit Court for Oconto County, Wisconsin, be and the same is hereby **VACATED**; and

-26-

**IT IS FURTHER ORDERED** that the writ of habeas corpus shall issue 120 days from the date of this order unless the State of Wisconsin brings Warrichaiet to trial beforehand; if Warrichaiet is not brought to trial within 120 days from the date of this order, the writ shall issue.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this  28th  day of July, 2006.


BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge